# EXHIBIT A

# Supreme Court of Pennsylvania

## Court of Common Pleas
## Civil Cover Sheet

_____ Allegheny _____ **County**

| For Prothonotary Use Only: |
|---|
| Docket No: |
| GD-22-009299 |

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**SECTION A**

**Commencement of Action:**
- ☒ Complaint
- ☐ Transfer from Another Jurisdiction
- ☐ Writ of Summons
- ☐ Petition
- ☐ Declaration of Taking

| Lead Plaintiff's Name: | Lead Defendant's Name: |
|---|---|
| Monica Zortea | Costco Wholesale Corp. |

| **Are money damages requested?** ☒ Yes ☐ No | Dollar Amount Requested: (check one) | ☐ within arbitration limits ☒ outside arbitration limits |
|---|---|---|

| **Is this a *Class Action Suit*?** ☒ Yes ☐ No | **Is this an *MDJ Appeal*?** ☐ Yes ☒ No |
|---|---|

Name of Plaintiff/Appellant's Attorney: Edwin J. Kilpela, Jr.

☐ **Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)**

**SECTION B**

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE.** If you are making more than one type of claim, check the one that you consider most important.

**TORT** *(do not include Mass Tort)*
- ☐ Intentional
- ☐ Malicious Prosecution
- ☐ Motor Vehicle
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability *(does not include mass tort)*
- ☐ Slander/Libel/ Defamation
- ☐ Other:
  _____
  _____

**MASS TORT**
- ☐ Asbestos
- ☐ Tobacco
- ☐ Toxic Tort - DES
- ☐ Toxic Tort - Implant
- ☐ Toxic Waste
- ☒ Other:
  Magnuson-Moss
  Warranty Act

**PROFESSIONAL LIABLITY**
- ☐ Dental
- ☐ Legal
- ☐ Medical
- ☐ Other Professional:
  _____
  _____

**CONTRACT** *(do not include Judgments)*
- ☐ Buyer Plaintiff
- ☐ Debt Collection: Credit Card
- ☐ Debt Collection: Other
  _____
- ☐ Employment Dispute: Discrimination
- ☐ Employment Dispute: Other
  _____
  _____
- ☐ Other:
  _____
  _____

**REAL PROPERTY**
- ☐ Ejectment
- ☐ Eminent Domain/Condemnation
- ☐ Ground Rent
- ☐ Landlord/Tenant Dispute
- ☐ Mortgage Foreclosure: Residential
- ☐ Mortgage Foreclosure: Commercial
- ☐ Partition
- ☐ Quiet Title
- ☐ Other:
  _____
  _____

**CIVIL APPEALS**
Administrative Agencies
- ☐ Board of Assessment
- ☐ Board of Elections
- ☐ Dept. of Transportation
- ☐ Statutory Appeal: Other
  _____
  _____
- ☐ Zoning Board
- ☐ Other:
  _____
  _____

**MISCELLANEOUS**
- ☐ Common Law/Statutory Arbitration
- ☐ Declaratory Judgment
- ☐ Mandamus
- ☐ Non-Domestic Relations Restraining Order
- ☐ Quo Warranto
- ☐ Replevin
- ☐ Other:
  _____
  _____

*Updated 1/1/2011*

# NOTICE

**Pennsylvania Rule of Civil Procedure 205.5. (Cover Sheet) provides, in part:**

**Rule 205.5.   Cover Sheet**

(a)(1)   This rule shall apply to all actions governed by the rules of civil procedure except the following:

(i)      actions pursuant to the Protection from Abuse Act, Rules 1901 et seq.

(ii)     actions for support, Rules 1910.1 et seq.

(iii)    actions for custody, partial custody and visitation of minor children, Rules 1915.1 et seq.

(iv)     actions for divorce or annulment of marriage, Rules 1920.1 et seq.

(v)      actions in domestic relations generally, including paternity actions, Rules 1930.1 et seq.

(vi)     voluntary mediation in custody actions, Rules 1940.1 et seq.

(2)      At the commencement of any action, the party initiating the action shall complete the cover sheet set forth in subdivision (e) and file it with the prothonotary.

(b)      The prothonotary shall not accept a filing commencing an action without a completed cover sheet.

(c)      The prothonotary shall assist a party appearing pro se in the completion of the form.

(d)      A judicial district which has implemented an electronic filing system pursuant to Rule 205.4 and has promulgated those procedures pursuant to Rule 239.9 shall be exempt from the provisions of this rule.

(e)      The Court Administrator of Pennsylvania, in conjunction with the Civil Procedural Rules Committee, shall design and publish the cover sheet.  The latest version of the form shall be published on the website of the Administrative Office of Pennsylvania Courts at www.pacourts.us.

## IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

MONICA ZORTEA, individually and on
behalf of all others similarly situated,

        *Plaintiff*,

              v.

COSTCO WHOLESALE CORP.,

        *Defendant*.

CIVIL DIVISION

No. GD-22-009299

Code:_____

CLASS ACTION

**CLASS ACTION COMPLAINT**

FILED ON BEHALF OF PLAINTIFF,
MONICA ZORTEA

COUNSEL OF RECORD FOR THIS
PARTY:

Edwin J. Kilpela, Jr. PA ID # 201595
Elizabeth Pollock-Avery
PA ID# 314841
Kenneth A. Held PA ID # 330442
**LYNCH CARPENTER, LLP**
1133 Penn Ave, 5th Floor
Pittsburgh, Pennsylvania 15222
Tel:   (412) 322-9243
Fax:  (412) 231-0246
ekilpela@lcllp.com
elizabeth@lcllp.com
ken@lcllp.com

**EAST END TRIAL GROUP LLC**
Kevin Tucker (He/ Him) PA ID # 312144
Kevin J. Abramowicz (He/Him)
PA ID # 320659
Chandler Steiger (She/Her) PA ID # 328891
Stephanie Moore (She/Her) PA ID # 329447
6901 Lynn Way
Suite 215
Pittsburgh, PA 15208
Tel.   (412) 877-5220
ktucker@eastendtrialgroup.com
kabramowicz@eastendtrialgroup.com
csteiger@eastendtrialgroup.com
smoore@eastendtrialgroup.com

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

MONICA ZORTEA, individually and on
behalf of all others similarly situated,

      *Plaintiff,*

          v.

COSTCO WHOLESALE CORP.,

      *Defendant.*

CIVIL DIVISION

No. _____

Code:_____

CLASS ACTION

## NOTICE TO DEFEND

**YOU HAVE BEEN SUED IN COURT**. If you wish to defend against the claims set forth in the following pages, you must take action within **TWENTY (20)** days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the Complaint or for any claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.**

**IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.**

LAWYER REFERRAL SERVICE
The Allegheny County Bar Association
11th Floor Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219
Telephone: (412) 261-5555

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

MONICA ZORTEA, individually and on
behalf of all others similarly situated,

CIVIL DIVISION

       *Plaintiff*,

No. _____

           v.

Code:_____

COSTCO WHOLESALE CORP.,

CLASS ACTION

      *Defendant*.

## CLASS ACTION COMPLAINT

Plaintiff Monica Zortea, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Costco Wholesale Corp. Plaintiff alleges the following based upon personal knowledge as to Plaintiff's own experiences, and as to all other matters upon information and belief, including investigation conducted by Plaintiff's counsel.

## NATURE OF THE CASE

1.    Plaintiff seeks injunctive and declaratory relief curtailing unlawful business practices related to consumer warranties for products sold by Costco Wholesale Corp. ("Costco" or "Defendant").

2.    The Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301–2312 ("Magnuson-Moss," the "Act," or "MMWA"), and its implementing regulations 16 CFR §§ 700.1, *et seq.*, require that retailers provide consumers with access to any written warranty for a product costing more than $15, prior to the point of sale (referred to herein as the "Pre-Sale Availability Rule").

3.    The Pre-Sale Availability Rule guarantees consumers an opportunity to be fully informed about warranty terms and conditions so they may choose a product with the best combination of price, features, and warranty coverage to meet their individual needs.

1

4.      In doing so, the Pre-Sale Availability Rule promotes competition among sellers to meet consumer preferences.

5.      To comply with Magnuson-Moss's Pre-Sale Availability Rule, sellers must make the terms of a product's written warranty "readily available for examination by the prospective buyer" by either (1) displaying the warranty "in close proximity" to the product or (2) placing signs around the store in prominent locations, alerting the consumer that he or she may inspect product warranties upon request. This obligation extends to any product with a written warranty that costs more than $15. 16 C.F.R. § 702.3.

6.      Unfortunately, Defendant does not provide consumers with access to written warranties, prior to sale, in a manner that complies with the Pre-Sale Availability Rule.

7.      Defendant's noncompliance is self-serving. Defendant is part of a global extended warranty industry that generated $120.79 billion in 2019 and is projected to reach $169.82 billion by 2027, growing at a compound annual growth rate of 7.4% from 2020-2027.[1] By offering its own "protection plans" and extended warranties to consumers at the point of sale, instead of giving consumers access to the manufacturer warranties included in their purchases already, Defendant increases the odds that consumers will purchase Defendant's own duplicative warranty services.[2]

8.      Plaintiff seeks an order requiring Defendant to provide Pennsylvania consumers with pre-sale access to the warranties that Magnuson-Moss's Pre-Sale Availability Rule requires.

---

[1] Yahoo, "Extended Warranty Market to Reach $169.82 Bn, Globally, by 2027 at 7.4% CAGR: Allied Market Research" (Jan. 24, 2022) (available at: https://www.yahoo.com/now/extended-warranty-market-reach-169-083000210.html?guccounter=1).

[2] Beth Braverman, "Why You Should Steer Clear of Extended Warranties," Consumer Reports (Dec. 22, 2018) (available at: https://www.consumerreports.org/extended-warranties/steer-clear-extended-warranties-a3095935951/) ("Two-thirds of in-store electronic shoppers and nearly three-quarters of appliance purchasers say that an associate has pitched one to them.").

## PARTIES

9.      Plaintiff Monica Zortea is a resident of Bucks County, Pennsylvania.

10.     Defendant Costco Wholesale Corp. is a retailer based in the State of Washington at 999 Lake Drive, Issaquah, WA 98027.

11.     Defendant sells goods that cost more than $15 and are subject to manufacturer warranties.

## JURISDICTION AND VENUE

12.     This Court has personal jurisdiction over Defendant because Defendant directs its conduct at Pennsylvania, transacts business in Pennsylvania, is registered to do business in Pennsylvania, has substantial contacts with Pennsylvania, has engaged and is engaging in conduct that has a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons in Pennsylvania, and has purposely availed itself of the laws of Pennsylvania.

13.     Defendant's activities in Pennsylvania gave rise to the claims identified herein.

14.     Venue is proper in Allegheny County because Defendant conducts substantial business in Allegheny County.

## EXCLUSIVE STATE COURT JURISDICTION
## PURSUANT TO 15 U.S.C. § 2310

15.     Exclusive jurisdiction lies with this Court, pursuant to 15 U.S.C. § 2310.

16.     Magnuson-Moss authorizes injured consumers to bring suit for "legal and equitable relief…in any court of competent jurisdiction in any State." 15 U.S.C. § 2310(d)(1)(A).

17.     However, the Act imposes specific limitations on the exercise of jurisdiction by federal courts, stating that "no claim shall be cognizable" in federal district court "(A) if the amount in controversy of any individual claim is less than the sum or value of $25; (B) if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed

3

on the basis of all claims to be determined in this suit; or (C) if the action is brought as a class action, and the number of named plaintiffs is less than one hundred." *Id.* § 2310(d)(3)(A)-(C).

18.     Plaintiff solely seeks equitable and declaratory relief individually and on behalf of all Class Members, in the form of Defendant complying with the Pre-Sale Availability Rule.

19.     Neither Plaintiff nor any Class Member asserts an individual claim for damages at all, much less one valued at $25 or greater.

20.     Neither of the requirements for federal jurisdiction set forth under § 2310(d)(3)(A) or § 2310(d)(3)(B) is satisfied.

21.     Further, because there are not one hundred named plaintiffs in this action, the requirement for federal jurisdiction set forth under § 2310(d)(3)(C) is not satisfied.

22.     Because none of the requirements for federal jurisdiction are satisfied under § 2310(d)(3), this Court has exclusive jurisdiction over this Action.

## COMMON FACTUAL ALLEGATIONS

23.     Magnuson-Moss is a consumer-protection law passed in 1975 to clarify how written warranties may be used when marketing products to consumers.[3]

24.     A warranty is a warrantor's promise to stand behind its product. It is a statement about the integrity of the product and a commitment to correct problems if the product fails.[4]

25.     In passing Magnuson-Moss, Congress encouraged sellers to offer written warranties to assure consumers and to foster competition for the best products. Although sellers are not required to provide warranties, many consumers are skeptical of products that do not have one.

---

[3] 15 U.S.C. §§ 2301, *et seq.*
[4] FTC, "Businessperson's Guide to Federal Warranty Law" (available at https://www.ftc.gov/business-guidance/resources/businesspersons-guide-federal-warranty-law).

26.     Magnuson-Moss creates multiple consumer protections related to warranties. Most deal with the substance of the warranties, themselves (*i.e.*, what a warrantor must—and must not—include as a term or a representation).

27.     But Magnuson-Moss also recognizes the need of consumers to have access to warranties when evaluating whether or not to buy a given product, as the strength of the warranty is a meaningful data point when considering a new purchase.

28.     Consumers have a right to choose a product with the best combination of price, features, and warranty coverage to meet their individual needs. As Congressman Moss stated in support of the law:

> One of the most important effects of this bill will be its ability to relieve consumer frustration by promoting understanding and providing meaningful remedies. This bill should also foster intelligent consumer decisions by making warranties understandable. At the same time, warranty competition should be fostered since consumers would be able to judge accurately the content and differences between warranties and competing consumer products.
>
> Perhaps one of the potentially most important and long range effects of this bill resides in its attempt to assure better product reliability. The bill…attempts to organize the rules of the warranty game in such a fashion to stimulate manufacturers, for competitive reasons, to produce more reliable products. This is accomplished using the rules of the marketplace by giving the consumer enough information and understanding about warranties so as to enable him to look to the warranty duration of a guaranteed product as an indicator of the product reliability.[5]

29.     The Senate report accompanying the introduction of Magnuson-Moss further clarified the need for and purpose of the law:

> When the use of a warranty in conjunction with the sale of a product first became commonplace, it was typically a concept that the contracting parties understood and bargained for, usually at arms length. One could decide whether or not to purchase a product with a warranty and bargain for that warranty accordingly. Since then, the relative bargaining power of those contracting for the purchase of consumer products has changed radically. Today, most consumers have little understanding of the frequently complex legal implications of warranties on consumer products.

---

[5] Federal Register/Vol. 40, No. 251/60168.

Typically, a consumer today cannot bargain with consumer product manufacturers or suppliers to obtain a warranty or to adjust the terms of a warranty voluntarily offered. Since almost all consumer products sold today are typically done so with a contract of adhesion, there is no bargaining power over contractual terms. [Magnuson-Moss] attempts to remedy some of the defects resulting from this gross inequality of bargaining power and return the sense of fair play to the warranty field that has been lost through the years as the organizational structure of our society has evolved. The warranty provisions of [Magnuson-Moss] are not only designed to make warranties understandable to consumers, but to redress the ill effects resulting from the imbalance which presently exists in the relative bargaining power of consumers and suppliers of consumer products.[6]

30.     Thus, Magnuson-Moss has a Pre-Sale Availability Rule that guarantees consumers

a right of access to complete information about warranty terms and conditions before purchasing

products that cost more than $15.[7]

31.     The Pre-Sale Availability Rule places distinct obligations both on warrantors *and*

retailers, like Defendant.

32.     Pursuant to the Rule, a "seller"[8] of any consumer product costing more than $15

and subject to a written warranty shall make a text of the warranty readily available for examination

by the prospective buyer by:

(1) Displaying it in close proximity to the warranted product (including through electronic or other means…), or

(2) Furnishing it upon request prior to sale (including through electronic or other means…) and placing signs reasonably calculated to elicit the prospective buyer's attention in prominent locations in the store or department advising such prospective buyers of the availability of warranties upon request.[9]

---

[6] Senate Comm. On Commerce, Report on S. 356, S. Rep. No. 93-151, 93d Cong., 1st Sess. (1973), at 6.
[7] *See,* 16 C.F.R. § 702.3.
[8] Defined as "any person who sells or offers for sale for purposes other than resale or use in the ordinary course of the buyer's business any consumer product." 16 C.F.R. § 702.1(e).
[9] 16 C.F.R. § 702.3(a) ("Duties of seller").

33.     While the Rule allows sellers to display or otherwise provide the text of a warranty "through electronic…means," it is not enough for sellers merely to refer customers to a product manufacturer's website. In allowing for the electronic presentment of warranty terms,

> Congress's intention…was not to disturb prospective purchasers' ability to obtain the full warranty terms at the point of sale, as envisioned by the Pre-Sale Availability Rule. While consumers with electronic devices and Internet connectivity may be able to review warranty terms at the point of sale by visiting the Web site that contains the warranty terms, not all consumers have such devices and Internet connectivity.[10]

34.     Thus, all retailers, including Defendant, are obligated to make the full terms of a product's written warranty accessible by consumers—without consumers resorting to their own Internet-enabled device—prior to the point of sale.

35.     Defendant fails to satisfy this obligation. Indeed, virtually all of the products—if not every single product—sold in Defendant's stores and on its internet platforms, are presented to the consumer without any pre-sale access to the product's warranty. Instead, the first time consumers can access the warranty is upon opening the product's packaging, after making a purchase.

36.     For example, Defendant sells Samsung televisions. If consumers using Defendant's website search for a Samsung television like the one Plaintiff purchased, Defendant will redirect them to a page offering consumers the opportunity to purchase not just the television, but also a Costco extended warranty and a warranty sold through Allstate.

---

[10] Federal Register/Vol. 81, No. 179/63666.



11

37.    What consumers cannot do, however, is find the terms of the Samsung warranty that is included in the television's underlying purchase price. Instead, if consumers scroll down and select the section titled "Warranty & Services," Defendant directs them to another advertisement for Defendant's extended warranty and technical support services:



12

38.    Defendant's website pages advertising its products, such as the page advertising the Product, do not contain information regarding the terms and conditions of manufacturer

---

[11] Costco, Samsung 65" – TU700D Series – 4K UHD LED LCD TV (last accessed July 19, 2022) (available at: https://www.costco.com/samsung-65%22---tu700d-series---4k-uhd-led-lcd-tv.product.100646394.html).
[12] *Id.*

warranties, but instead direct consumers to the manufacturers themselves, in contravention of the Pre-Sale Availability Rule: "For more information about this product or warranty issues, please call 1-800-SAMSUNG (1-800-726-7864)."[13]

39.     Defendant violates the Pre-Sale Availability Rule by referring consumers to Samsung's contact information, generally, without also including a link to a downloadable or printable version of the entire text of the Samsung warranty before the point of sale.[14]

40.     At checkout, Defendant's employees are typically instructed to ask consumers whether they would like to purchase a warranty for their product (often, this prompt occurs automatically at the register upon a particular product's UPC code being scanned).[15]

### PLAINTIFF'S SPECIFIC ALLEGATIONS

41.     Over time, Plaintiff has purchased at least one product costing more than $15 from Defendant that included a manufacturer's warranty, including the Product at issue here, which she purchased on or about November 15, 2021.

42.     In the course of purchasing the Product, Defendant did not display product warranties in close proximity to the Product; nor did Defendant place signs reasonably calculated to elicit Plaintiff's attention, in prominent locations in the store or on its internet platforms, advising Plaintiff of the availability of warranties upon request.

---

[13] *Id.*

[14] Federal Register/Vol. 81, No. 179/63665, n. 14 ("The requirement to make warranties available at the point of purchase can be accomplished easily with respect to online sales by, for example, using a clearly-labeled hyperlink, in close proximity to the description of the warranted product, such as 'get warranty information here' to lead to the full text of the warranty, and presenting the warranty in a way that it can be preserved, either by downloading or printing, so consumers can refer to it after purchase.").

[15] Beth Braverman, "Why You Should Steer Clear of Extended Warranties," Consumer Reports (Dec. 22, 2018) (available at https://www.consumerreports.org/extended-warranties/steer-clear-extended-warranties-a3095935951/) ("Two-thirds of in-store electronic shoppers and nearly three-quarters of appliance purchasers say that an associate has pitched one to them.").

43.     Accordingly, Plaintiff was unable to access any warranty associated with the Product until after the point of sale.

44.     Plaintiff anticipates buying new products costing more than $15 that are subject to manufacturer warranties in the future, and would consider purchasing said products from Defendant, but does not wish to have her rights under Magnuson-Moss thwarted by Defendant's failure to comply with the Pre-Sale Availability Rule.

**CLASS ALLEGATIONS**

45.     Plaintiff brings this action individually and on behalf of all others similarly situated under Rules 1702, 1708, and 1709 of the Pennsylvania Code of Civil Procedure.

46.     Plaintiff seeks to certify the following Class: "All persons in Pennsylvania who purchased one or more products from Defendant that (a) cost more than $15 and (b) included a written manufacturer's warranty.

47.     Plaintiff reserves the right to modify or refine the Class definition based upon discovery of new information or in order to accommodate any concerns of the Court.

48.     Excluded from the Class are Defendant, Defendant's parents, subsidiaries, affiliates, officers and directors, any entity in which any defendant has a controlling interest, governmental entities, and all judges presiding over this litigation, as well as their immediate family members, and members of the staffs of the judges to whom this case may be assigned.

49.     Pa. R. Civ. P. 1702(1), 1708(a)(2): The Class is so numerous that joinder of all members is impracticable. Upon information and belief, the Class contains thousands of individuals, at least. The precise number can be determined by reference to Defendant's records.

50.     Pa. R. Civ. P. 1702(2), 1708(a)(1): Plaintiff and each Class Member share numerous common questions of law and fact that will drive the resolution of the litigation and predominate

10

over any individual issues. For example, there is a single common answer to the questions of whether Defendant's acts and practices complained of herein violate Magnuson-Moss and the appropriate injunctive relief to ensure Defendant no longer violates the Pre-Sale Availability Rule. The answers to these questions are the same for Plaintiff and each Class Member, and Plaintiff and each Class Member require the same proof to answer these questions. These questions, and others, predominate over any individual issues.

51.     Pa. R. Civ. P. 1702(3): Plaintiff's claims are typical of the claims of each Class Member because the claims are based on the same legal theories and arise from the same conduct.

52.     Pa. R. Civ. P. 1702(4), 1709: Plaintiff is an adequate representative of each Class Member because the interests of Plaintiff and each Class Member align. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of each Class Member and has no interest antagonistic to any Class Member. Plaintiff retained counsel who are competent and experienced in the prosecution of class action litigation generally and consumer class actions specifically. Plaintiff has or can acquire adequate financial resources to assure that the interests of each Class Member will not be harmed.

53.     Pa. R. Civ. P. 1708(a)(3), (6), (7): Given the nature of the issues presented and the relief requested, the expense and time necessary to obtain such relief, and the anticipated recovery and relief that Plaintiff and each Class Member may obtain, the class action mechanism is by far the preferred and most efficient litigation mechanism to adjudicate the claims of Plaintiff and each Class Member. Additionally, requiring Plaintiff and each Class Member to file individual actions would impose a crushing burden on the court system. Class treatment presents far fewer management difficulties and provides benefits of a single adjudication and economies of scale

11

54.     <u>Pa. R. Civ. P. 1708(a)(4)</u>: Based on Plaintiff's knowledge and of undersigned counsel, there are no similar cases currently pending in this Court against Defendant.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.**

55.     Plaintiff incorporates the allegations contained in the preceding paragraphs.

56.     Plaintiff is a "consumer," as defined in MMWA, 15 U.S.C. § 2301(3).

57.     Defendant is a "seller," as defined in MMWA, 16 C.F.R. § 702.1(e).

58.     Defendant sells products that include "written warranties" as defined in MMWA, 15 U.S.C. § 2301(6); 16 C.F.R. § 702.1(c).

59.     Defendant sells products that are "consumer products," as defined in MMWA, 15 U.S.C. § 2301(1); 16 C.F.R. § 702.1(b).

60.     Consistent with 16 C.F.R. § 702.3, as a seller of consumer products with written warranties, for all products costing more than $15 Defendant must display product warranties in close proximity to the relevant product, or place signs reasonably calculated to elicit consumers' attention, in prominent locations in the store or department, advising consumers of the availability of warranties upon request. 16 C.F.R. § 702.3(a). Defendant does neither of these things.

61.     Plaintiff has been damaged as a result of Defendant's failure in this regard.

62.     Because Plaintiff has purchased, would like to, and is likely to purchase products from Defendant in the future that cost more than $15 and include manufacturer warranties, Plaintiff is entitled to injunctive relief and corresponding declaratory relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that this Court:

      a.     Certify this case as a class action, appoint Plaintiff as Class representative, and appoint Plaintiff's counsel to represent the Class;

      b.     Find that Defendant's actions, as described herein, constitute violations of Magnuson-Moss;

      c.     Enter judgment against Defendant for all injunctive, declaratory, and other equitable relief sought;

      d.     Award all costs, including experts' fees, attorneys' fees, and the costs of prosecuting this action; and

      e.     Grant such other legal and equitable relief as the Court may deem appropriate.

Dated: July 26, 2022                Respectfully submitted,


                          */s/ Edwin J. Kilpela, Jr.*
                          Edwin J. Kilpela, Jr.
                          PA ID # 201595
                          Elizabeth Pollock-Avery
                          PA ID# 314841
                          Kenneth A. Held
                          PA ID # 330442
                          **LYNCH CARPENTER, LLP**
                          1133 Penn Ave, 5th Floor
                          Pittsburgh, Pennsylvania 15222
                          Tel:    (412) 322-9243
                          Fax:   (412) 231-0246
                          ekilpela@lcllp.com
                          elizabeth@lcllp.com
                          ken@lcllp.com

                          Kevin Tucker (He/Him)
                          PA ID # 312144
                          Kevin J. Abramowicz (He/Him)
                          PA ID # 320659
                          Chandler Steiger (She/Her)
                          PA ID # 328891
                          Stephanie Moore (She/Her)
                          PA ID # 329447

13

**EAST END TRIAL GROUP LLC**
6901 Lynn Way, Suite 215
Pittsburgh, PA 15208
Tel. (412) 877-5220
ktucker@eastendtrialgroup.com
kabramowicz@eastendtrialgroup.com
csteiger@eastendtrialgroup.com
smoore@eastendtrialgroup.com

*Attorneys for Plaintiff and the Class*

14

**VERIFICATION**

I, Monica Zortea, am fully familiar with the facts set forth in this Complaint. I verify that the averments contained in this Complaint are true and correct to the best of my knowledge, information, and belief. I understand that any false statements herein are made subject to the penalties of 18 Pa. C.S. § 4904, relating to unsworn falsification to authorities.

Dated: July 25, 2022        */s/ Monica Zortea*
                             Monica Zortea (e-signed with permission)

Lynch Carpenter LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222

RECEIVED

AUG 16 2022

Legal Dept

John Sullivan
Costco Wholesale Corporation
990 Lake Drive
Issaquah, WA 98027-8990

7020 0090 0001 6188 2787



1000

98027





U.S. POSTAGE PAID
FCM LG ENV
PITTSBURGH, PA
15222
AUG 08, 22
AMOUNT

$9.17

R2305M148040-12